SERGE APOSTOLOFF, Respondent, *v.* C. SEDGEWICK LEVY and Others, Individually and as Copartners, Doing Business under the Firm Name and Style of LEVY BROTHERS, Appellants.

First Department, March 7, 1919.

Principal and agent — delivery of check, through third person, to brokers payable to their order for purpose of selling securities " short "— opening of account by said third person with brokers and receipt by him of balance of proceeds of check — liability of brokers for money had and received.

Where an owner of securities decided to sell them " short " and for this purpose delivered his check to M., who had advised the sale, payable to the order of a firm of stockbrokers, and instructed M. to hand the check to the brokers, and within a quarter of an hour thereafter M.

telephoned that he had concluded the transaction, and the seller of the securities was subsequently informed by the brokers that they had no account with him, and it appeared that M. who was known to the firm to have served a State prison sentence had brought the check and opened an account in his own name which was subsequently closed out at a loss, and the balance paid to him, the brokers were put on notice by the fact that the check brought to them by M. was drawn by the seller to their order. The check upon its face imported the ownership by the seller of the money represented in it.

Having notice that the money represented by the check belonged to the seller, the brokers had no right to use it to open an account in the name of M. and to pay him funds out of said account.

Even if the brokers were merely put on notice that they were dealing with an agent of the seller, M. was at most a special agent and the brokers paid the seller's money to the agent at their peril.

Said brokers are not in the position of an innocent party entitled to charge the loss against the one who enabled the fraud to be committed, and accordingly the seller is entitled to recover his money as had and received by the brokers for his use.

APPEAL by the defendants, C. Sedgewick Levy and others, from an order and determination of the Appellate Term of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 20th day of June, 1918, reversing a judgment of the City Court of the City of New York and directing a judgment in plaintiff's favor for the sum of $1,000.

*Leo J. Bondy*, for the appellants.

*L. E. Schlechter*, for the respondent.

SHEARN, J.:

The plaintiff, a consulting engineer who had been in this country but a short time, having come from England, had become acquainted with one Montgomery, whom he had met on four or five occasions with reference to some industrial transactions in which Montgomery was a broker. On June 2, 1917, while plaintiff was calling on Montgomery at the latter's office, Montgomery explained to him that there was a good chance to make money by selling Studebaker common stock short. Plaintiff decided to sell 100 shares short and, for this purpose, delivered to Montgomery his check dated June 2, 1917, drawn on the National City Bank for $1,000, payable to

the order of the defendants Levy Brothers, who are stockbrokers. Montgomery gave plaintiff a receipt showing that the check was received for this purpose. Plaintiff's instructions to Montgomery were to hand the check to the stockbrokers "together with the copy of the receipt regarding my instructions what this thousand dollars is for." Within a quarter of an hour Montgomery telephoned plaintiff that he had concluded the transaction at eighty-one and one-quarter. Plaintiff paid no further attention to the matter, as his business called him out of the city, for several weeks, but he followed the stock reports, noted that the stock had gone down and went to the defendants' office about July twenty-fifth, telling one of the defendants that he had come to buy in his stock and to close his account. The defendants informed him that they had no account with him. What had happened was this: Montgomery, who had had numerous transactions with the defendants and who was known to them to have served a state prison sentence, brought the check to the defendants and had them open an account in his name and sell 200 shares of Studebaker short for him on a five point margin, which he made good with plaintiff's check. He had several transactions in the account and it was closed out at a loss, leaving a balance of $571 which the defendants paid to Montgomery, part payment being by $250 cash which Montgomery drew out. Defendants' claim is that they were entirely innocent in the transaction, that plaintiff was unknown to them, and, as between the two innocent parties, the loss should fall on the plaintiff who put it into Montgomery's power to defraud him. This would be so unless there were facts in the transaction putting the defendants on notice. The Appellate Term, reversing the Trial Term, which directed a verdict in favor of the defendants, has found, and I think correctly, that the defendants were put on notice by the fact that the margin check, brought to them by Montgomery, was drawn by the plaintiff to the order of the defendants. The check upon its face imported the ownership of the moneys represented in it by the plaintiff. (*Sims* v. *U. S. Trust Co.*, 103 N. Y. 472.) As was said in *Hathaway* v. *County of Delaware* (185 N. Y. 368, 373): "The check was drawn by the plaintiffs to the

order of the defendant. It imported on its face that the money represented by it was the property of the plaintiffs, and that they, not Woodruff, were paying it to the defendant." It is true that in *Timpson* v. *Allen* (149 N. Y. 513) the court did say in the course of a long opinion: " The fact that the checks given to Ballard were payable to the order of defendants does not, standing by itself, charge the defendants with notice that the Ballard account on their books was owned by plaintiff." But even here it is noticed that the court did not say that this fact did not charge the defendants with notice that the money represented by the check was the plaintiff's money. What was said in the *Timpson* case has to be interpreted in the light of the peculiar facts of that case. Without going into them at length, it suffices to say that the plaintiff was a regular customer of the brokers' office in that case, speculated there for a long time and to the defendants' knowledge had requested that his accounts be carried in the name of Ballard, who was connected with the office and handled plaintiff's orders, so that plaintiff's name might not appear on the brokers' books as a speculator. As the account was, according to the instructions, to be opened in Ballard's name, there was no notice of any irregularity and nothing to constitute a conversion on the part of the defendants in making payment to Ballard on account of the speculative special account in his name, which was understood to be operated by Ballard for the plaintiff. The entire course of dealing was such as to create an apparent authority on the part of Ballard to conduct the account as he did, make payments into it and receive payments out of it on behalf of plaintiff. The *Timpson* case is, therefore, no authority for overturning the principle announced in the *Sims* and *County of Delaware* cases. Having notice that the money represented by the check belonged to the plaintiff, the defendants had no right to use it to open an account in the name of another and to pay such other person funds out of that account. If it be assumed that the defendants were merely put on notice that they were dealing with an agent of the plaintiff, Montgomery was at most a special agent and the defendants paid plaintiff's money to the agent at their peril. (*Edwards* v. *Dooley,* 120 N. Y. 540.) In my opinion the defendants were put on

notice by the check, and they are not in the position of an innocent party entitled to charge the loss against the one who enabled the fraud to be committed, and accordingly the plaintiff is entitled to recover his money, as had and received by the defendants for the use of the plaintiff.

The determination of the Appellate Term should be affirmed, with costs.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Determination affirmed, with costs.