■ SAUL I. BIRNBAUM, Appellant-Respondent, v MARINE MIDLAND BANK, N. A., Respondent-Appellant, and JAY B. BIRNBAUM, Respondent. — Order, Supreme Court, New York County (Rena Uviller, J.), entered January 31, 1983, denying plaintiff's motion for summary judgment on his first cause of action and Marine Midland's cross motion for summary judgment dismissing the second cause of action and for interpleader relief, permitting it to hold the funds on deposit to the credit of the action pending final judgment or discharging it upon payment of the funds into court, affirmed, without costs or disbursements. The action seeks to compel Marine Midland to release funds held in checking, savings and tax escrow accounts and in a certificate of deposit, all in the name of Queensbury Plaza. The bank records for both the savings and checking accounts authorized withdrawals to be made by plaintiff, Saul Birnbaum (Saul), or defendant, Jay Birnbaum (Jay). The tax escrow account, which was to be maintained as long as there was an outstanding mortgage debt, was to be renewed or paid into the checking account on maturity. Prior to commencement of this action to compel the bank to release the funds on deposit, Jay had brought an action on March 30, 1982, against Saul in Supreme Court, Monroe County, to enforce a joint venture agreement and for an accounting, contending that he was entitled to a one-third interest as a joint venturer. Two months later, on May 27, 1982, Jay alone instructed Marine Midland to permit no withdrawals from the accounts unless the signatures of both Saul and Jay appeared thereon. As a result, the bank refused to comply with Saul's direction to transfer the certificate of deposit, pointing to the existence of conflicting claims. By order and judgment entered July 28, 1982, Justice Lyman Smith in the Monroe County action dismissed the action on a finding that the failure of Jay to make a capital contribution, as required by the joint venture agreement, precluded Jay from any interest in Queensbury Plaza. In regard to the "alleged joint venture", he declared that Jay "had no interest therein or thereunder." Jay's motion for renewal and reargument, wherein he claimed that the entity actually was an existing partnership and that he was not required to make any contribution as a condition to the accrual of any partnership rights, was denied and no appeal has been taken. Here, in denying both the motion and cross motion for

summary judgment, Special Term found that there were factual questions as to whether Jay had any right to the moneys on deposit on some legal basis other than the joint venture agreement, thereby constituting a separate and different issue than that disposed of in the Monroe County action. As between Saul and Jay, there are conflicting claims to the deposits, the entitlement to which not having been resolved by the disposition in the Monroe action. Clearly, the decision and orders of the Monroe County action are only determinative of the fact that Jay had no interest in Queensbury Plaza as a joint venturer. Relitigation would be precluded under established *res judicata* and collateral estoppel principles (*Schwartz v Public Administrator of County of Bronx*, 24 NY2d 65; *Smith v Russell Sage Coll.*, 54 NY2d 185). However, there remains for disposition whether Jay has any other legal interest in the fund, which has not been determined. The factual issue precludes summary resolution as to the first cause of action. We find that the cross motion by Marine Midland for interpleader relief and for dismissal of the second cause of action, sounding in conversion, was properly denied. While the bank has asserted no claim to the funds on deposit, on this record it is not a mere stakeholder. Plaintiff charges that the bank honored checks on the Queensbury accounts which had been signed by Janice Birnbaum, Jay's mother, who apparently had no authority and no interest in Queensbury Plaza. Marine Midland's records confirm, at least on the surface, that Janice was not authorized to draw against the Queensbury accounts. While we recognize that the bank has asserted no specific claim to the funds, under the circumstances of this case, involving, *inter alia,* a claim that the bank acted improperly and inconsistently with its depositor's instructions in honoring those checks, payment into court and discharge as stakeholder under CPLR 1006 (subd [f]) and section 134 (subd 6, par [b]) of the Banking Law would be inappropriate and unwarranted. The signature cards executed when the accounts were established required the signature of either Saul or Jay for any withdrawal. The refusal to honor Saul's instructions to pay over the funds in light of conflicting claims may be appropriate under subdivision 4 of section 134 of the Banking Law. However, Saul's claim that the bank improperly honored checks drawn by Janice, who had no authority to do so, may amount to a conversion (see *Hillsley v State Bank of Albany,* 24 AD2d 28; *Tonelli v Chase Manhattan Bank,* 53 AD2d 183, affd 41 NY2d 667). With due deference to the function of the court on a motion for summary judgment as issue finding, not issue determination, there is a question here of whether the actions by Marine Midland were consistent with the obligations imposed upon it when the accounts were open. At this stage in the litigation, we cannot determine on this record whether the bank is entitled to the protection afforded by subdivision 4 of section 134 of the Banking Law. While the bank claims that it acted in accordance with Jay's letter request directing that no withdrawals be made except upon the signatures of both Saul and Jay — contrary to the instructions given when the accounts were opened — the claim that defendant improperly honored checks drawn by one lacking requisite authority is sufficient at this stage to deny interpleader relief and consequent discharge as a stakeholder. As to the proposal by the dissent that the moneys on deposit be applied to the reduction of the note and mortgage, this would disregard the relief sought by the plaintiff herein, in expressly seeking that the bank "turn over these accounts to me * * * to begin construction during this construction season." Furthermore, there are other considerations militating against the dissent's suggestion, namely, Jay Birnbaum may ultimately be found to have an interest in those funds and his possible rights should not be ignored. Also, the bond and mortgage may preclude payment and the ultimate owners of such moneys may desire to use the fund for a different purpose, without judicial interference or mandate to prepay the mortgage.

Finally, none of the parties, including the bank, seeks such relief. Concur — Asch, Milonas and Kassal, JJ. Kupferman, J. P., dissents in part in a memorandum and Silverman, J., concurs in part and dissents in part in a separate memorandum, as follows.

Kupferman, J. P. (dissenting in part). The plaintiff-appellant asks that the fund on deposit, consisting of some $300,000, be applied to the note and mortgage held by the bank on the premises known as Queensbury Plaza. Special Term, in Monroe County, having determined against the defendant Jay Birnbaum, and an appeal therefrom having been taken and abandoned, there would seem to be no further issue to be considered, and so summary judgment should be granted on the first cause of action. Nonetheless, the defendant "Jay" signed for the bank on a note and mortgage, which has a prepayment clause, and which in any event is due on September 1, 1984. Therefore, the only logical conclusion of this matter is to grant the plaintiff Saul's motion and apply the fund to the note and the mortgage and, at least to that extent, terminate this matter. Contrary to the statement in the court's memorandum, the plaintiff specifically asked for this relief at the oral argument.

Silverman, J. (concurring in part and dissenting in part). I would dismiss the second cause of action as against Marine Midland Bank, and otherwise affirm the order appealed from. (1) The decision in the Monroe County Supreme Court action establishes that *inter se* plaintiff Saul Birnbaum and defendant Jay Birnbaum are not joint venturers or partners in relation to the Queensbury Plaza venture. It does not determine — perhaps because the issue was not presented to that court — the ownership and disposition of the funds which the parties had dedicated to the aborted joint venture. In particular, it does not determine who owns the moneys on deposit with the bank — Saul or Jay individually, or the two of them jointly with each other and perhaps with Ilene Flaum. Neither does it determine that vis-à-vis the bank, Saul and Jay and/or Ilene are not jointly liable on the mortgage or jointly entitled to the moneys on deposit with the bank. (2) The deposit may well constitute a joint asset to be applied first to the discharge of joint obligations. In any event, on this record, it is not yet established that Saul individually owns the deposit. Therefore, plaintiff Saul Birnbaum's motion for summary judgment on the first cause of action was properly denied. (3) As the bank had notice of conflicting claims to funds its refusal to pay the deposit to either of the conflicting claimants until a judicial determination (Banking Law, § 134, subd 4) was proper, and not a conversion. Therefore, the bank's motion to dismiss the second cause of action for conversion should have been granted. (4) I am unable at this time on this record to foresee the ultimate disposition of the deposit and whether it will be applied to joint obligations. And as the bank is apparently the chief joint obligee, I think it is desirable to keep the bank in the action so that complete relief may ultimately be granted to the parties. I therefore vote to affirm the denial of the bank's motion for an order striking the bank as a party to the first cause of action pursuant to CPLR 1006 and section 134 (subd 6, par [b]) of the Banking Law. For the same reason, it was proper to deny the bank's motion to dismiss the first cause of action which seeks a direction to the bank to release all the funds to plaintiff. Under this cause of action, and in the exercise of the court's power to "grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded" (CPLR 3017, subd [a]), the court can ultimately make an appropriate disposition of the funds. (5) I am unable to see the materiality of the allegations that the bank "in the past" honored checks drawn by one Janice Birnbaum who had no signing authority. If the bank honored checks improperly, the bank will simply not be credited for the amount of such checks.