OPINION OF THE COURT
 

 Ciparick, J.
 

 We are asked on this appeal to decide whether a drawee bank, sued for conversion under UCC 3-419, is entitled to show that the payee received a benefit from the converted checks and therefore should recover less than their face value. We conclude that while a drawee may claim a setoff for funds actually received by the payee, the rule of absolute liability stated in UCC 3-419 (2) precludes further inquiry into whether the payee, who has not recovered the funds, in fact benefitted from the proceeds of the checks.
 

 Plaintiff Pauline Mouradian’s estranged husband, Sarkis Mouradian, forged her signature on three checks drawn by Astoria Federal Savings and Loan and made jointly payable to plaintiff and her husband. The checks, totaling $37,890.60, were deposited in accounts at Norstar, N.A. and Citibank, N.A. The ultimate payments on the checks were made by Manufacturers Hanover Trust (MHT). Plaintiff brought this action against Norstar and Citibank, as depository banks, and MHT as drawee bank for conversion. Plaintiff sued Astoria, the drawer, for breach of contract and breach of fiduciary duty as well as for conversion.
 

 Plaintiff moved for summary judgment on the third, fourth and fifth causes of action asserted against MHT on the basis of UCC 3-419 (2), which states:
 

 "In an action against a drawee [for conversion] the measure of the drawee’s liability is the face amount
 
 *128
 
 of the instrument. In any other action * * * the measure of liability is presumed to be the face amount of the instrument.”
 

 The parties’ summary judgment submissions reveal that plaintiff was separated from her husband when a house they jointly owned in Garrison, New York, was damaged by fire. An escrow account for the insurance proceeds was established at Astoria, the mortgage holder. Thereafter, Astoria sent the checks at issue, made payable to Pauline and Sarkis Mouradian, without any restrictive indorsements, to plaintiff’s husband. Plaintiff’s husband admitted during their divorce proceedings that he forged her signature on the checks but claimed that the proceeds were used to make repairs to their fire-damaged house. However, plaintiff was unaware of the extent of the damage or the repairs undertaken and was never billed for work or services performed.
 

 In opposition to plaintiff’s summary judgment motion, MHT argued that plaintiff is precluded from recovering because she benefitted from the funds which were used to repair her house and because the forged indorsements resulted from plaintiff’s negligence. Relying on the plain language of UCC 3-419 (2), Supreme Court granted plaintiff’s motion for summary judgment. In response to MHT’s equitable arguments, the court noted that plaintiff had no knowledge of the use to which the funds were applied. Supreme Court also granted the cross motion by defendants depository banks, Citibank and Norstar, to dismiss Astoria’s cross claim against them and severed the remaining causes of action.
 

 The Appellate Division affirmed, with two Justices dissenting. The majority acknowledged that MHT would not be precluded from claiming a setoff if plaintiff had received all or part of the proceeds from the converted checks. However, the majority noted that plaintiff never received any of the proceeds nor did she have control over or input into how the funds were used. The dissenters were of the view that the statute should be construed to permit a setoff to the extent that the plaintiff realized a benefit from the proceeds. They argued that such a broad interpretation would be consistent with the equitable provisions espoused in UCC 1-103 and 1-106 and with UCC 3-420 (2 ULA 127 [Master ed 1991]). MHT appeals pursuant to CPLR 5601 (a) and we now affirm.
 

 Pursuant to UCC 3-419 (1) (c), an instrument is converted when it is paid on a forged indorsement. The UCC distinguishes between a drawee converter and a nondrawee converter. While
 
 *129
 
 the measure of liability of a nondrawee is
 
 presumed
 
 to be the face amount of the check, "the measure of the drawee’s liability
 
 is
 
 the face amount of the instrument” (UCC 3-419 [2] [emphasis added]). Thus, the clear language of UCC 3-419 (2) prescribes the measure of damages against a drawee to be absolute — that is, the face amount of the check in question.
 

 Official Comment 4 to this section indicates that the section is new and leaves no doubt that "[i]n the case of the drawee * * * the presumption [of liability for the face value of the instrument] is replaced by a rule of absolute liability” (UCC 3-419, Official Comment 4, McKinney’s Cons Laws of NY, Book 62½, at 314 [1991]). This provision also represents a departure from pre-Code case law insofar as it imposes an absolute liability on the drawee
 
 (compare, Hillsley v State Bank,
 
 24 AD2d 28, 30,
 
 affd
 
 18 NY2d 952 [recovery on a forged instrument may be defeated by proof that the rightful owner has suffered no damage],
 
 with Williamson v Citibank,
 
 157 Misc 2d 578; and
 
 Lawyers’ Fund for Client Protection v Manufacturers Hanover Trust Co.,
 
 153 Misc 2d 360 [both holding that UCC 3-419 (2) imposes absolute liability on drawees];
 
 see also,
 
 New York Annotations to UCC 3-419, McKinney’s Cons Laws of NY, Book 62½, at 315).
 

 Initially, we agree that the rule of absolute liability will not preclude a setoff where the payee has received all or part of the proceeds of a converted instrument. Pursuant to UCC 1-106 (1), the remedies in the act are to be liberally administered "to the end that the aggrieved party may be put in as good a position as if the other party had fully performed”. Where the payee receives all or part of the proceeds from either the forger or the wrongfully paying bank, a setoff for sums previously received will obviously put the payee in as good a position as if her signature had not been forged.
 
 [1]
 
 Thus, UCC 1-106 is consistent with the general principle that recovery will be denied where the proceeds of an improperly paid check actually reach the person intended to receive them
 
 (see, Tonelli v Chase Manhattan Bank,
 
 41 NY2d 667, 670-671).
 

 Lund v Chemical Bank
 
 (797 F Supp 259) is illustrative of this principle. In
 
 Lund,
 
 a drawee bank was held liable for conversion under section 3-419 but was permitted to claim a
 
 *130
 
 setoff where it was established that one of the copayees had been fully reimbursed by the wrongdoer
 
 (id.,
 
 at 272). Contrary to MHT’s assertion, however,
 
 Lund
 
 is distinguishable from the present case. Here, it is uncontroverted that plaintiff neither received the funds nor had control over or input into the use to which the funds were applied.
 
 [2]
 
 Notably, the checks contained no restrictive indorsements and were therefore plaintiff’s to use as she saw fit and not as dictated by the forger
 
 (see, Tonelli v Chase Manhattan Bank, supra,
 
 41 NY2d, at 671). Accordingly, UCC 1-106 is of no avail to MHT.
 

 To inquire further whether plaintiff in fact received a benefit from the converted funds, and therefore suffered a loss lower than the face amount of the checks, is contrary to the express provisions of UCC 3-419 (2). While the Code allows the consideration of common-law and equitable principles, it does so "[u]nless displaced by the particular provisions of this Act” (UCC 1-103). UCC 3-419 (2) clearly distinguishes the measure of liability of drawee converters from that of nondrawee converters, leaving the availability of common-law defenses open only to nondrawee converters. Hence, the particular provision of UCC 3-419 (2) displaces contrary pre-Code common-law and equitable principles
 
 (see,
 
 McKinney’s New York Annotations to UCC 3-419,
 
 op. cit.,
 
 comparing the new provision with prior law as stated in
 
 Hillsley v State Bank, supra,
 
 24 AD2d 28,
 
 affd
 
 18 NY2d 952;
 
 [3]
 

 see also, True v Fleet Bank-N.H.,
 
 138 NH 679, 645 A2d 671).
 

 That the availability of common-law defenses is denied to drawees under UCC 3-419 (2) is reinforced both by Official Comment 4 to that section, discussed above, and by the revision of article 3 in 1990 which replaced UCC 3-419 with 3-420. The new provision — UCC 3-420 (2) — eliminates the distinction between drawee converters and nondrawee converters and prescribes a rule of presumptive liability in all cases
 
 (see,
 
 UCC 3-420 [2], Official Comment 2, 2 ULA 129 [Master ed 1991]).
 
 *131
 
 However, New York has not adopted UCC 3-420 and, therefore, the rule of absolute liability enunciated in UCC 3-419 (2) remains the law in New York.
 

 In urging this Court to weigh the proof submitted by the banks to determine whether plaintiff received a benefit from the converted checks MHT is, in effect, asking the Court to ignore the clear provision of UCC 3-419 (2) and to apply UCC 3-420 (2) to the facts of this case. This we cannot do. Had the Legislature intended to replace the rule of absolute liability, it would have adopted UCC 3-420. In the circumstances, we must conclude that the retention of UCC 3-419 (2) is a choice made by the Legislature given the joint policy considerations of certainty and loss allocation underlying article 3 of the UCC
 
 (see generally, Getty Petroleum Corp. v American Express Travel Related Servs. Co.,
 
 90 NY2d 322). In any event, a drawee bank is not without recourse as it may bring an action against a depository bank where a check is paid over a forged indorsement
 
 (see,
 
 UCC 3-417 [transfer warranties]).
 

 MHT next argues that plaintiff should be precluded from recovering because the forged indorsements resulted from her negligence. MHT relies on UCC 3-406 which provides that:
 

 "Any person who by his negligence
 
 substantially
 
 contributes to * * * the making of an unauthorized signature is precluded from asserting * * * the lack of authority against a * * * drawee * * * who pays the instrument in good faith and
 
 in accordance with the reasonable commercial standards of the drawee’s
 
 * * * business” (emphasis added).
 

 To prevail under this provision, a drawee must show that it acted in good faith in accordance with reasonable commercial standards and that the plaintiff’s negligence substantially contributed to the forgery. Here, MHT made no showing, in opposing summary judgment, that it acted in a commercially reasonable manner, nor is there any evidence that plaintiff’s conduct substantially contributed to the forged indorsements.
 

 In sum, we conclude that, absent a showing that a payee has actually received part or all of the proceeds of a converted check, a drawee is strictly liable under UCC 3-419 (2) for the face amount of the check.
 
 [4]
 

 
 *132
 
 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Wesley concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Actual receipt of the proceeds from the forger may preclude denial of the indorsement’s authenticity and assertion of forgery
 
 (see,
 
 UCC 3-404 [1] [a forged indorsement is "wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it”];
 
 see also, Bank of W. v Wes-Con Dev. Co.,
 
 15 Wash App 238, 548 P2d 563, 567).
 

 [2]
 

 . The out-of-State cases relied upon by MHT are similarly distinguishable. In those cases the payees recovered all or part of the funds (see,
 
 e.g., Southern Cal. Permanente Med. Group v Bozinovski,
 
 148 Cal App 3d 503, 196 Cal Rptr 150;
 
 Twellman v Lindell Trust Co.,
 
 534 SW2d 83 [Mo Ct App];
 
 Starkey Constr. v Elcon, Inc.,
 
 248 Ark 958, 457 SW2d 509;
 
 Maynard Inv. Co. v McCann,
 
 77 Wash 2d 616, 465 P2d 657;
 
 Lurz v Panek,
 
 172 Ill App 3d 915, 527 NE2d 663).
 

 [3]
 

 .
 
 Hillsley
 
 is not inconsistent with the Code insofar as it recognizes the general principle that recovery on a forged instrument may be defeated by proof that payment was made to the person entitled to the check (24 AD2d, at 30).
 

 [4]
 

 . Perhaps because it has always contended that plaintiff benefitted from the full amount converted, MHT did not raise below the issue, addressed by
 
 amici curiae,
 
 of plaintiff’s status as a copayee. The question whether a co-
 
 *132
 
 payee may recover the full face value of a converted check is therefore unpreserved for our review.